This is JPMorgan Chase Bank. Mr. Paddock. Good morning. Good morning. Thank you, Your Honor, and may it please the Court. My client, John Pinson, raises claims under the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, and I'd like to make two overarching points before turning to each specific claim. The first is that both of these statutes were enacted to protect naive and unsophisticated consumers in what has become an increasingly complicated financial marketplace that ordinary Americans can have a tough time navigating. Thus, these statutes require financial institutions and consumer reporting agencies to abide by certain rules and restrictions in order to ensure that even naive consumers can know they are receiving accurate information about their financial accounts and creditworthiness. Second, this case comes to the Court at the 12B6 stage, not at summary judgment and not after trial, like many similar cases this Court has seen. So this Court is required to credit all of the allegations in the complaint and permit this case to proceed if Mr. Pinson has simply stated a claim for relief, and he has. I'd like to begin in reverse order, if that's all right. Reverse order from the briefing and start with the Fair Credit Reporting Act claim, because I think that claim presents the simplest issue before this Court, namely that the District Court and the defendant have simply misread the complaint. And I think it's indicative that the only dispute here on appeal between the plaintiff and the defendant is whether or not Mr. Pinson alleged that JPMorgan Chase Bank received notice from a consumer reporting agency, and he certainly did allege that in the complaint. Specifically, at paragraph 85 of the complaint, he alleged that Chase failed to conduct an investigation after receiving notice that the plaintiff disputed the information said defendant had provided to consumer reporting agencies. And from where was that notice? It says it at paragraph 87 of the complaint. At paragraph 87, it says Chase failed to review all relevant information provided by the consumer reporting agency pursuant to section 1681I. And section 1681I, of course, is the very provision of the Fair Credit Reporting Act that would require a consumer reporting agency like TransUnion to transmit any dispute to the creditor, which in this case, the alleged creditor is JPMorgan Chase Bank, N.A. And so, and I just kind of reiterate with this Fair Credit Reporting Act claim that all we're saying is that they needed to conduct the investigation that was required under the act and demonstrate that they conducted that investigation and what the result of it was. So a remand on that count would not impose much of a burden at all. Well, is it clear from the complaint that the notice was received from the credit reporting agency? I think it is, Your Honor. It says specifically at paragraph 87, Chase failed to review all relevant information provided by the consumer reporting agency pursuant to section 1681I. Provided by could mean to your client. Provided to your client, then your client's the one making the objection versus the credit reporting agency dealing with Chase, couldn't it? Well, I think it says provided by the consumer reporting agency. So, in other words, the information was provided by the consumer reporting agency is what it specifically says at paragraph 87. And then importantly, it says pursuant to section 1681I. And so, pursuant to section 1681I can only mean that the consumer reporting agency itself transmitted the information to JPMorgan Chase Bank because 1681I is the very provision of the FCRA that requires a consumer reporting agency to transmit that information to a creditor when there is a dispute. So, I think the only fair reading, and it is certainly a plausible reading of the complaint at this early stage of the case, but I really think the only fair reading of paragraph 87 of the complaint is that the consumer reporting agency was the one that provided the information and they did it pursuant to section 1681I, which is the very statutory requirement that would require them to do that. And again, Your Honor, I don't think this is imposing really any burden on the other side other than to just show that they completed the investigation they were required to complete under the statute. That's all the Act requires of them, and that's all we're asking them to do. If you were given an opportunity to amend, you would be able to amend to indicate that a reporting agency had been the one who requested the information from the furnisher. Sorry, that a reporting agency... As opposed to just your client complaining to Chase, that you would be able to truthfully allege in the complaint that the inquiry had been made via the reporting agency. Is that what you're saying? You'd be able to be more specific so there'd be no ambiguity in that particular paragraph. Well, certainly we could amend the complaint and make that clearer, but I think it's actually quite clear from the complaint already, Your Honor. So certainly there are some instances... It doesn't seem clear to me, but you could make it clear. Is that correct? That is correct, Your Honor. Yes. And I'll just add, you know, there were a few times in the complaint where it says that he disputed with JPMorgan Chase Bank, but that shouldn't take away from the fact that he clearly disputed the claim with TransUnion. And then the complaint at paragraph 87 specifically says that TransUnion, pursuant to section 1681I, transmitted that dispute to JPMorgan Chase Bank. If you were given the opportunity to amend the FCRA claim, are there any other amendments you would make? I think that that's really the only dispute that's here on appeal. And just the... So the short answer is no, Your Honor, unless Your Honor is suggesting to me that there's something else that you might be unclear about in the claim. But really that is the only dispute that's been raised on appeal here. The only real difference of opinion here is whether or not my client specifically, whether or not the dispute went from the Consumer Reporting Agency to the creditor as the statute requires under 1681I. And I think that's quite clear from the complaint already, and we'd certainly be happy to amend to make that even clearer if necessary. The statute requires the reporting from TransUnion to the creditor. That's exactly right, under 1681I, and that's precisely what's in the complaint, that they did so pursuant to section 1681I. And so if there are no further questions on the FCRA claim, I'm happy to turn to the FDCPA claim. Let me just ask you one more question. If we were to determine that Chase did not use a false name under the FDCPA, how does that affect if it does affect your FCRA claim? I don't think it affects the FCRA claim, Your Honor. So the only way in which that would even potentially come into play would be to show that my client had Article III standing and injury. Otherwise, the claim here is that they failed to investigate, and all they have to do is show evidence that they did investigate. And so that's the end of the matter. The investigation could actually show that they investigated, there was no problem with the account, and the trade line should continue to show on his consumer report. So that's the claim that he's putting forward, that they failed to investigate that trade line. And the investigation could come out however it comes out, including that the investigation showed that the trade line should appear. Normally, the only information that the consumer would receive when there's an investigation is the information is either changed or it isn't. Right. That's exactly right. So he knows, obviously, that it hasn't changed. It's continuing to report. And so at that point, he basically has no idea what exactly they did, if they followed the statute or not. And it would be very simple to simply say, yes, we followed the statute, we did the investigation, here are the results. And his investigation focused on who the actual creditor was or the collecting agent was, what those names mean, what is he asking to be investigated? Yeah, that's exactly right. Well, he's basically saying that that trade line isn't inaccurate because he doesn't have an account with Chase Home Finance LLC. And so it will provide whatever information they ended up investigating, presumably whether or not that name is the correct name that should be appearing, what it is that that entity is, some explanation of that. And, you know, in his view, correcting the trade line and, in fact, that that trade line should not exist in the way that it's existing currently on this consumer report. So, right, that would be the result that he would expect. But they have to at least show that they did something under the statute. And right now there's no evidence that they've done anything. And, you know, honestly, this would have been very easy to resolve. They could have just presented evidence in an answer attached to an answer. This wouldn't even have to go beyond a motion on the pleadings. They could just present evidence attached to an answer to his complaint. And they chose not to file an answer. They've chosen to, you know, keep sort of litigating this issue at the 12B6 stage without just showing that they did the investigation. What about the part of your FCRA claim you didn't deal with this where you're alleging that defendant obtained the report for an unauthorized purpose? That allegation seems a bit inadequate, to me at least, because it's a rather conclusory allegation that they obtained it to use for litigation purposes, trial preparation, when I think the complaint also acknowledges that you had a past-due account with defendant where it seems to me a permissible inference that a creditor of some of the past-due account might legitimately get the credit report and there's no necessarily plausible inference that it's for some other purpose. Well, a couple things in response to that, Your Honor. The first is I just want to be very clear that the complaint does not actually allege that there is a prior account with JPMorgan Chase Bank N.A. What it says is that any alleged debt is not in question here, and it says that JPMorgan Chase Bank has been presenting itself as a creditor in communications to Mr. Pinson. But it doesn't actually say in the complaint, it doesn't admit anywhere in the complaint specifically that Mr. Pinson has an account, an unpaid debt, with JPMorgan Chase Bank N.A. And I think that's exactly the point of this claim. The two parties here were in litigation before, and then the defendant started allegedly pulling Mr. Pinson's consumer report repeatedly, which can certainly have negative consequences in and of itself on a person's credit. And so he just wants to know why it is they're doing that. And again, this is another situation where they can just come back and actually show that there is an open account that he has with them if that is in fact the case, which really isn't said one way or another in Mr. Pinson's complaint. They can say one way or another whether there is an open account and whether that's the reason that they were pulling his consumer report. And if they're able to show that, then that would be the end of the matter. But they haven't shown that. That would be the end of the matter for purposes of summary judgment, you're saying. Well, even potentially judgment on the pleadings. If they're able to present evidence with their answer that shows exactly why it is that they pulled the report and show we have an open account, these are the reasons why, that we regularly do this with somebody with an open account, that is to say if all of that is actually true and they can show that, then right. That would be the end of the matter. And certainly by summary judgment, that would be the end of the matter because there would be an opportunity for them to sort of more clearly spell that out. And so I know I'm running short of time, but I would like to touch on the FDCPA claim. I think it raises a couple important issues. The first is the false name exception, which in this case we submit that despite the fact that J.P. Morgan Chase Bank, N.A., is the creditor in this case, they would fall under the false name exception because of the use of this term Chase Home Finance LLC on the consumer report. And in addition, we would submit that communications to a consumer reporting agency, just like communications to a debtor, qualify as communications in connection with a debt under the act. I know you're over your time, but I'm surprised you spent so much time on the other one. I thought this was the claim you were most focused on. But with the time that we have, the false name exception, though, the standard looks, if you're using a different name, as to what the least sophisticated consumer would think. What the least sophisticated consumer see. Chase Home Finance and not discern, well, gee, that's the same person I borrowed it from, J.P. Morgan Chase Bank. Isn't it a problem for your argument that your client was never confused at all, that he himself, you know, correctly identified Chase Home Finance as a defendant, sent a letter to the defendant, knew who it was, and, in fact, that communications throughout his relationship had used both these names. Is that not sort of a death knell for your argument that the least sophisticated consumer would be confused? Well, not at all, Your Honor, for a few different reasons. The first is that this is an objective standard. So we're not looking at what my client would have known, but we're looking at what the least sophisticated consumer would have known. But even looking to what my client would have known. But the least sophisticated consumer, who's been getting mailings from an entity that uses both names interchangeably, wouldn't the least sophisticated consumer in any scenario objectively not be confused? I don't think that's actually what happened here. So all we know from the complaint is that what happened is that there is an alleged debt out there and that J.P. Morgan Chase Bank N.A. has been presenting itself as the creditor. And then in 2012, on his consumer report, he noticed a trade line that said Chase Home Finance LLC. He doesn't have an account with Chase Home Finance LLC, and he's been contesting that trade line ever since. So it's certainly not the case in the complaint that there's any allegation that J.P. Morgan Chase Bank N.A. has been using the pseudonym Chase Home Finance LLC since the beginning of its relationship with Mr. Pinson or that it sort of commonly uses that name more broadly. That's not in the complaint, and there's really no evidence to that effect at this point. All we know is that the first time that my client saw the trade line Chase Home Finance LLC on his consumer report, he did not have an account with Chase Home Finance LLC and therefore began disputing that and putting in time and effort to figure out why it is that that particular trade line was reporting. And I think that's actually a pretty reasonable thing to do. I mean, these companies like J.P. Morgan Chase Bank are very complicated and sort of gigantic entities that have a number of different subsidiaries and shells, affiliates, and then they also have debt collectors. Well, he knows he owes a mortgage, and there's no separate entry indicating you also owe money to J.P. Morgan Chase. The only entry pertaining to his mortgage goes to this particular entity. So he knows what it's for. He knows it's his mortgage, right? Well, again, there's no allegation in the complaint that he owes a mortgage. He has not stated that at any point in this case. And I just add, even if let's just assume that he knew that he had an unpaid debt, and this is, again, not in the complaint, but he knew that he had an unpaid debt with J.P. Morgan Chase Bank, it still would be confusing to the least sophisticated consumer why it is that a different name, a name quite different from the one that he thinks he owes a debt to, is suddenly appearing on his consumer report for the first time. And, you know, these kinds of things can affect, you know, oftentimes consumer reports are used to, you know, sort of check against liens or check against other accounts. The fact that there's a different name that's appearing can really have dramatic ramifications. And more importantly, I don't think he knows whether or not, despite the fact that J.P. Morgan Chase Bank may be a creditor, whether or not they've sent it to their debt collector called Chase Home Finance LLC, which would be a substantial escalation in their efforts to collect any outstanding debt. So, you know, even if he has, you know, kind of some inkling that there may be a connection between these two entities, that still doesn't mean that, you know, he wouldn't have a claim under the FDCPA, wouldn't be very understandably anxious and confused and worried about, you know, why it is that there's sort of this other entity that's appearing that, you know. So you're also arguing that assuming that this is, he thinks it's a debt collection effort. Is it really a debt collection effort to look at your credit report and see the listing of a name familiar or otherwise? Is that, you argue that that is a debt collection effort? We do, Your Honor. So the reason is because this court has sort of articulated a very broad standard in the Caceres case. You said, if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the act. So this clearly conveys information about the debt. It has an amount of the debt, the fact that it's unpaid, to whom it's owed. And I think it's quite clear that the aim is at least in part to induce debtors to pay. And that's because, you know, it's not really, there seems to be two plausible purposes for why. He's got nothing from anybody to pay, but because it's on his report, that itself is an effort to get him to pay the debt. Well, absolutely, because it says that it is unpaid on his consumer report, and that in and of itself is a severe negative consequence on a person's credit. Obviously, credit is an extremely important thing in our economy today. It allows you to get a loan. It allows you to, sometimes you even need it to get a job. So, you know, the fact that you're reporting that a particular debt is unpaid and putting it on this sort of very significant document, I think really is part of an incentivizing effort on the part of a financial institution to get particular individuals to pay their debts. I can't see it as any other sort of way. The only other possible explanation for why financial institutions are reporting this type of information is, you know, just, I guess, to be nice to other creditors and let them know, oh, you know, this guy's here, and he has an unpaid debt. And so, you know, it really all seems to come down to this idea that when you have this kind of reporting mechanism, it's a way to really enforce debts and say, look, if you don't pay your debts, we're going to put this on your credit report, and we're going to sort of broadcast it, you know, widely and loudly to all other potential future people that want to know about your credit history. And so for that reason, you need to pay your debts. And there are a whole slew of courts that have held that. Obviously, there are courts that have gone the other way as well. It's an undecided issue in this circuit. But I think really the weight of the evidence, including the Fair Trade Commission, which has looked at this, and a number of other courts have shown quite clearly that consumer reports can have these effects and that creditors use consumer reports to try to enforce their debts. And I would just add one final thing. I know I'm way over time, but, you know, to the extent this court has some question about what it is, why JPMorgan Chase Bank or other creditors and debt collectors, for that matter, are using consumer reports to, you know, in what way they're using them and whether they're using them in part to enforce debts, you know, that really could be a factual question that certainly should not cause this case to be thrown out at the motion to dismiss stage before there is some further development about why it is that creditors and debt collectors use consumer reports. One more question before you sit down. Well, I can't promise there will actually be one, but we'll start with one. Of course. Standing. Tell me why you have standing. Yes, Your Honor. So in the Spokio case, I think the court was very clear that although you need to show a concrete injury, intangible injuries count. And that would be, in a case like this, the type of emotional distress that you might feel if you see your consumer report, which obviously is a document that has significant consequences on a person's ability to get credit, and you see a trade line that you don't recognize before and you don't know why it's appearing there. And so, you know, again, there's… But those injuries would also arise if you actually have a debt. You know, you have a debt and it's being reported. You may suffer all of those things. Well, but in that situation there would be no injury because if you actually have the debt and all the information is accurate, you wouldn't be able to have a claim. So, I mean, there would be… So from the inaccurate information in particular, what is the injury? That he spent money trying to correct this? Well, it's a combination of two things. It's the worry and anxiety. So, for instance, that paragraph, I believe it's 173 of the complaint. He says that he experienced worry, anxiety, nervousness, anguish over the fact that he was suddenly seeing an entity that he had never seen before, and it said that he owed a substantial debt to that entity. And so, he doesn't know what exactly that means. He doesn't know whether… He knows it's his mortgage, doesn't he? But, well, again, he hasn't actually alleged that in the complaint, so we don't necessarily know that. But even assuming that's true, even if he knew 100% that that particular amount of the debt he did owe to another entity, he doesn't know why it's appearing as Chase Home Finance LLC. And that can lead any person… I mean, honestly, if I saw my consumer report, and it showed a debt that I thought I did owe to another entity, but suddenly there was this new name appearing, and I'd never seen that new name before, never in my credit relationship with the particular creditor had I seen that name before, I would have serious questions about what exactly is going on here. You'd just think they'd transferred the loan to somebody else, wouldn't you? Well, they may have done that, but they never told Mr. Pinson about that. And so, he doesn't actually know what's going on. He doesn't know if Chase Home Finance LLC is a debt collector. He doesn't know if it's a subsidiary or an affiliate of JPMorgan Chase Bank. And I would just note, I mean, look, there's so many examples that we've seen, particularly since the financial crisis, of instances where big banks and financial institutions have engaged in somewhat shady practices. I mean, the Wells Fargo example, for instance. They literally created fake accounts and tried to charge fees to consumers who never consented to the creation of those accounts. So, you know, this is not just a hypothetical. This actually happens in the real world. These are very complicated financial institutions that have a lot of different, you know, their mergers, their separations, their shells, their subsidiaries, their affiliates, and, of course, their debt collectors, most importantly for this case. And so, I don't think it is, you know, too much of a stretch to say, if you received your consumer report and there is a name on it that you don't recognize and you've never seen before, you would say, you know, what's going on here and have to expend some time, some money, some energy, trying to figure out whether or not that trade line is reporting correctly and that you would experience worry and anxiety and confusion over that, which certainly is an intangible injury that the court has recognized is sufficient to show Article III standing. In our FCRA cases, it seems to me we've focused on things that are very concrete, like time lost in disputing the information or an actual drop in your credit score. What is in this complaint along those lines? He has absolutely alleged both of those things. At paragraph 173, he specifically says that he suffered a decrease in his credit score, and he says that repeatedly elsewhere in the complaint. And, again, I don't think that these are, you know, the Supreme Court specifically said that an intangible injury counts. And I'd just also note that this court has looked at a whole slew of FDCPA and FCRA cases over the past few years, and, frankly, standing does not come up very often in them, and that is because these types of injuries are quite cognizable. They come up repeatedly, and this is exactly the type of injury you would expect from this sort of claim, the claim where the Congress has created a particular remedy under these statutes for, you know, misleading or inaccurate statements. The very injury you would expect to happen is confusion and worry and anxiety over that misleading or inaccurate statement and the time spent to try to correct that particular inaccurate statement. And he has certainly alleged that he spent time correcting the inaccurate statement, Your Honor. Thank you very much. I think we'll let you sit down now, but we'll give you your full time for rebuttal. Thank you very much, Your Honor. Good morning. Good morning, Your Honors. My name is Andrew Bose from the law firm of Leon Cosgrove, and I represent the appellee, J.P. Morgan Chase Bank, N.A. There's not sure where to start now. Who holds this mortgage? Is it J.P. Morgan Chase Bank or Chase Home Finance, LLC? It is the creditor is J.P. Morgan Chase Bank, N.A., and that is what it is right now. And I can tell you that this debt and this relationship, the one allegation in the complaint that talks about this is it says that the alleged debt is not. Which claim are you talking about now? I'm going to start with the FDCPA claim, if that's all right, Your Honor. Thank you. And I guess I'll lay the groundwork here a little bit. This is not the first FDCPA claim that Mr. Pinson has brought in regards to this particular debt. He did sue Chase. That's not in the complaint, is it? It is, Your Honor. It is, Your Honor. Specifically, he says in paragraph 37 that he was involved in previous litigation in this court, Pinson v. J.P. Morgan Chase Bank, et al. He cites the case number. And the reason he talks about it is he says he wants to make clear that the operative facts that he's relying on for these counts occurred after that case was dismissed. And it did go up on appeal and was affirmed that the operative facts here occurred after that case was dismissed so that there is not a rest judicata issue. So he specifically incorporates that prior. I got you. Okay. I stand corrected. And he sued Chase in that. So when he sued them, he knew at that time in 2013. They say in one of their pleadings that it was 2014. I think from the case itself it was 2013. He's alleging that J.P. Morgan Chase Bank N.A. is the debt collector. He doesn't sue anyone else, but his pleadings also say that he saw this, he started seeing this trade line with another entity in 2012. So he was perfectly aware of this other entity more than a year before he decided to sue Chase as his debt collector and go through that and discover that the case couldn't be maintained because, in fact, they were a creditor and not subject to the act. That's just background. So to bring Chase under the auspices of the FDCPA because it is a creditor, they have to comply with two different things. The first is that Chase had communications with Mr. Pinson in an attempt to collect the debt, and I know that that was a question that was had, and I think that is a dispositive issue in this regard based on a line of cases from this court. So J.P. Morgan Bank owns the debt. That's true, right? That's correct, Your Honor. And you're trying to collect it. Yes? Presumably they're trying to collect it. I mean, what do you mean they? Your client. And you tried to collect it in the name of Chase Finance, this other name. The allegation is that a trade line on a consumer credit report, so a communication to TransUnion from Chase, outlining the current status of the monthly installment payments, had next to it the name Chase Home Finance, LLC. Okay. So I guess my question, you know, the 15 United States Code 1692-A-6 defines a debt collector as any creditor who, in the process of collecting his own debts, uses any name other than his own, which would indicate that a third person is collecting or attempted to collect such debts. Why doesn't your client come within that definition? Or do you agree that it does? No, for two reasons. And the first is, in order to be subject to the Act at all, even if you are a debt collector, and I think the same analysis that this Court goes through under 1692-E, which is for any alleged violation of this Act, even if you are a debt collector, that you have to have a communication in connection with the collection of a debt. And that's the first question. Actually, but that's not my question. Okay. I get that other argument. But do you agree or do you disagree that you're a debt collector under this 1692-A-6 provision? I don't, Your Honor, because that one also says any creditor who, in the process of collecting his own debt, uses any name other than his own that would indicate to a third person, that indicate that a third person is collecting it. And in the process of collecting their own debts is really the same as the preamble to 16— I think, Judge Martin, I want to give you all the time in your adversary head, so I want us to go through everything. Okay. And that's going to be an interesting question, but she's asked a couple times, assume that by sending this information to the reporting agency, you were trying to collect a debt. You're not conceding that and you're going to talk about that in a minute. Correct. But if you could answer her question, would you not— the argument is by using the false name, then you come under that false name exception. You wouldn't normally be a creditor, but if you use a—somebody collecting a debt, but if you use a false name, you would. And if you could enlighten us on that point. If you're asking me to assume that the same activity that is going to be analyzed under 1692-E under— in connection with the collection of a debt, in other words, what activity qualifies attempting to collect a debt is not necessary for 1692-A-6, where it says using another name in the process of collecting his own debts, which to me sounds like exactly the same thing. So I think that analysis could be done in either place. Most of it is done under E in the line of cases, but I think it would be the same here. But then the second piece of 1692-A-6 is that would indicate that a third person is collecting, and that's where I would say that they are not a debt collector because— And that's based on your position that reporting this debt to TransUnion, a credit reporting agency, that's not an effort to collect a debt. That's what you're basing that on. I'm basing it on that, and I'm basing it on the fact that a least sophisticated consumer would not believe that a third person is collecting their debt by seeing Chase Home Finance as compared to— And why? That is just this whole part of the claim. So why do you say that? As J.P. Morgan Chase. Well, I think the much clearer one is that it is not in connection with debt, which is dispositive of this claim. But in terms of whether someone would be confused, the case law that Mr. Fatak cites, too, and which—if I pronounce that correctly— and all of the case law that analyzes whether or not someone would reasonably believe that it was a third party doing this. In other words, that they had hired a debt collector, a hired gun, to collect their debt for them. Well, here there's one word that's the same, Chase, right, in the two names. That's correct. I didn't see any case holding that because you have a word in common, that means that the least sophisticated consumer would understand it's the same entity. Is there one? There are a string of cases that essentially hold that. They don't say that outright. Each of these cases looks at it and asks, ultimately, is this a name that the least sophisticated consumer would have a false impression that the third party was collecting the debt? Right, but I'm talking about something very specific. What is the case that holds that because you have a name or a word in common, that that is sufficient? Is there one? It doesn't say it like that, but there are cases factually where that's what it is. Which cases? So the first one is Allgood v. West Asset Management, which we cite in our brief, and the names there are USAA FSB, and the other name is USAA Secured Home Equity. Remind me of the jurisdiction of that. That is the District Court in Nevada, Your Honor. So that has only USAA in common. Those are acronyms, USAA. USAA. I don't know if that's an acronym. Anything else? Any other cases? There is a case where it is Lehigh Country Club. If it's in your brief, you can just tell me the name of it. Young v. Lehigh Corporation. Reese v. JPMorgan Chase, where it is JPMorgan Chase and Chase Home Finance LLC. And that is the Southern District of Florida. There is Thomas v. Commercial Recovery Systems, which is JPMorgan Chase and Chase Auto Finance. There is Drew v. Rivera. Let me ask you this question. What if Chase had used the name Chase Debt Collection LLC? Wouldn't that be a false name that would suggest to the least sophisticated consumer that it was a debt collection agency rather than a creditor that was contacting or that was making the representation? I would think that someone would more likely believe that that was a department or an affiliate of Chase. And the exceptions to the application of the Fair Debt Collection Practices Act applies equally to affiliates or departments that are collecting debt for that creditor. Is your argument based on the fact that everybody knows what Chase is? Is that what the courts that specifically dealt with these entities said? Essentially, they said, I'm trying to look at one of the quotes that dealt with that particular name, and it said, the court finds no merit in this argument. Congress did not intend that the FDCPA be interpreted with such hair-splitting. And that was Burke v. JPMorgan Chase Bank. And this court dealt with essentially the exact same issue in Leonard v. Zwicker & Associates, and the name there was American Express, and it was American Express Centurion Bank or American Express Receivable Financing Corporation 3 LLC, and the name that the person was using was simply American Express. And what the court essentially said was, a consumer would not have been confused or misled as to the identity of the creditors as a result of Zwicker's letter. So there are a lot of cases that talk about this, and essentially the only— The courts have gone the other way. The two that I'm aware of are the main two cases that Mr. Pinson relies on, one out of the Second Circuit called McGuire and one out of the Seventh Circuit called Kattenkamp. And the case out of the Second Circuit, McGuire, there's no similarity at all. You have Dunning letters from Citicorp Retail Services, and they only identify themselves as debtors' assistants. So the comparison is Citicorp Retail Services and debtors' assistants. Let me ask you another question. We have a case of Bishop v. Ross Earl from the circuit in 2016 talking about the least sophisticated consumer test, and it says that it has an objective component, but it prevents liability for bizarre or idiosyncratic interpretations of collection notices. It doesn't seem to me that the plaintiff's interpretation here is bizarre or idiosyncratic. How do you meet that standard? That someone would not know. In other words, we're asking— In other words, it has to be a bizarre or idiosyncratic interpretation of a false name to avoid liability. To not know that when you take out a home loan with JPMorgan Chase Bank that you might get communication from Chase Home Finance, the department that deals with home financing, when you financed your home with them through JPMorgan Chase. I think that Chase is a common name, and that's what most of the courts recognize when they look at it. And to suggest that you are completely misled I do think is idiosyncratic. And I don't think, as a matter of fact, that Mr. Pinson was misled. But that's using a subjective standard, not the objective. It is, but if someone actually— I don't think anybody thinks he's an unsophisticated consumer. But would it be an objective standard if the facts in the complaint are that he himself alleges the least sophisticated consumer who has been receiving letters that consistently refer to them interchangeably, the least sophisticated consumer who has had so familiar with this entity he writes back to Chase knowing that they are one and the same? Your argument is that's got to be the objective standard because that's the least sophisticated consumer under these facts. You have to consider the rest of the facts. And that was what I was getting to in the two cases that do find that they're different. And that's what those cases look at, and we have plenty of facts in our case as well. Am I going to be given—I don't know how much time because we have FCR. So in one of the two cases that Mr. Pinson relies on, the McGuire case, for example, one of the things they look at—and again, these names aren't similar at all. They look at prior correspondence, and they say prior correspondence between Citicorp and McGuire did not establish or suggest that Citicorp was affiliated. So they're interested in what—in other things that he knew that would cause the least sophisticated consumer to be on notice of who they were dealing with. They even considered whether a phrase that said a unit of CRS, which would correspond to Citicorp retail services, might clue the debtor in, but they said it was buried in the body of the letter and it had not appeared in prior correspondence. So again, they're interested had he received notice of this before. And it's the same in the Seventh Circuit Kattenkamp case, which is the other main case that Mr. Pinson relies on, where they're interested in the context, and the court again noted two important things for that. They said Sendent did not, however, communicate with Kattenkamp in its own name. It used a trade name that he had never encountered before. And then they said they also used another acronym that was also novel to Mr. Kattenkamp. And here, the only communications alleged in this entire complaint, if—and I don't accept this at all, and I think the case law is very clear that they are not communications in connection with the collection of a debt, and I do want to get to that because the string of cases from this circuit is long and very clear on that point, that the reporting to the— Well, do you want to get to that now? Okay, I would love to get to that now. But if even those were communications, those are the only communications alleged in here. So the only communications alleged in this entire complaint are communications from Chase Home Finance. And what does Mr. Pinson do? He calls Chase. He immediately calls Chase about it. So just so I understand your position, so your view of the law is that a debtor can never hold a creditor liable under these statutes for using a wrong name as long as they're not communicating with the debtor. If it is not a communication in connection with a debt, even if they were a debt collector, they wouldn't be. And that line of cases is the line of cases that Mr. Fetak began talking about. It begins with Reese and— Let me be a little more basic and make sure I'm understanding Judge Martin's question. Your position is by reporting this to—by sending this debt to the—reporting it to the reporting agency, that's not activity in connection with a collection of a debt, even if you are a debt collector. Absolutely. That's your argument. Yes. So tell us why. Let me just build on that. Your position is that so long as the creditor does not communicate with the debtor using a name that's not their own, the debtor can never hold them liable under this statute. Is that your position? Doesn't communicate with the debtor. Well, my position is what is the rule that this court has laid out, beginning with Reese. I want to know. I'm giving you a hypothetical. Okay. Okay. Say it one more time. A bank, a creditor, a debt collector is going all over the place communicating about a debtor not using its own name but never communicating directly with the debtor. Under your reading of the statute, the debt collector cannot be held liable, correct? If it is not a communication in connection with the collection of a debt. I didn't say that. No. I didn't say that. I said, no, they're trying to collect it. But if it's not a communication in connection. To the debtor. I think it could be. It's conceivable. I mean, I think if it's internal emails at the creditor department and they're using names and talking about how they're going to go collect this debt and they're talking about them, certainly not. I mean, I'm trying to think of another scenario where they're going to be talking to someone else. But the analysis is always this. You know, what this court has consistently said is for it to be that, it's got to demand payment. In Reese, it says it's explicit. In Caceres, it goes and it says it could also be implicit. It's got to threaten some implications for failure to pay. For example, attorney's fees and costs accruing. State the amount of the debt and how or to whom it's to be paid. And it's got to say that it's collecting debt. And those criteria have been what this court has used to measure whether or not a communication with a debtor specifically. So, you know, I think it's more far field. All of these are – well, there's a couple examples where it's not expressly with the debtor. It's where it's a notice of sale is one of the examples. But even when it's directly to the debtor, this court says it's not a communication in connection with a debt if it doesn't meet those criteria. So it starts in 2012 with Reese. That same criteria continues in Caceres in 2014. Dunavant in 2015 where they were publishing a foreclosure notice. And this court held that that only amounted to the enforcement of the security interest and not the collection of debt. And to me, that's a very strong statement because advertising the final imminent act of collecting a debt through foreclosing on someone's home, if that's not going to spur someone to action to pay a debt, I don't know what is. You know, when you sell someone's home, you are collecting the debt. You're selling it in satisfaction of the debt. You can't bring a foreclosure if you don't own the debt. And the advertisement of that was not a communication in connection with a debt. What case was that? That is Dunavant versus Cerote and Permut. And Judge Martin, I believe you were on that panel. It seems like I'm on a lot of panels. And there's another one, St. Ville versus Perimeter, which is another case from this court in 2015. Again, Judge Martin, you were on that panel. I don't think there are many that I'm not on. And a letter from a law firm. It was held not to be related to debt collection to charge someone under this statute because they didn't demand payment or any underlying debt. They simply provided notice of foreclosure. And even though the notice referenced underlying debt and explained that Wells Fargo was declaring the entire amount due and payable, still, it was held not to be a communication in connection with a debt. And the ultimate rule that was set out was, look, this court said in 2016, another case, Farquharson, and it said it in Pinson, the most recent Pinson case as well. We look to the language of the communication in question, specifically to statements that demand payment and discuss additional fees if payment is not tendered. Are any of those in the record, any of the communications? I mean, are any of those in the record? There is no allegation that a trade line in a credit report has any language about demanding debt or consequences if debt isn't paid at a certain time. And that's the only communication. My question is, on this record, 12b-6, do we have the communication from whomever that caused that trade line to show up on Mr. Pinson's TransUnion credit report? Well, the communication that's been alleged is not a letter from Chase to TransUnion. The communication that's been alleged in the complaint is the report itself, the trade line itself. He's alleging that that is a communication to him because he read that. Well, I'll let him speak for himself about his allegations, but we don't know how that came to be on his credit report, do we? It is not in the complaint. I can tell you that Chase Home Finance LLC was a wholly owned subsidiary that serviced for Chase, and that is not in the record. So we have never— Which is not unusual at a 12b-6 stage. We have not said anything about that. I think we've cited one case where they point out that it was a wholly owned subsidiary that merged as a fact from another case. All right, we're getting on in time. Could you deal with—do you all have other questions about that? I want to hear from the Credit Reporting Act. Could you talk to us a little bit about the FCRA? Yes, the one—I think I can address the FCRA a little more quickly. The cases, again, from this court, Pert v. Shippey, Green v. RBS National Bank, from the Southern District, Ramboran v. Bank of America, say that this provision of the FCRA can be enforced through a private right of action only if the furnisher received notice of the consumer dispute from a credit reporting agency. And he says that he made the allegation that it was provided to, and from that you can infer that you did receive notice. And he points to one provision that you could possibly infer that way. Other than that, every— Well, as the argument, he should be—as the argument, then, I guess his argument, he should be allowed to amend his complaint to make that clear. And my response to that would be when this was first recommended to be dismissed, without prejudice, I believe, there was a motion for leave to amend included in the objection to the reported recommendation. In this appellate brief, there is not a request to amend this. But he did request in his objections to amend, and essentially the district court denied that request. But it did not grant leave to amend, and there was no request in this initial appellate brief at all about leave to amend. And I would say that, you know, the court didn't create that requirement to make it clear, where it says it doesn't matter if you got that notice from some other source. This court didn't create that rule as something that can't be complied with. And his complaint really almost seems to go out of its way to avoid saying that. You know, they did find one provision that you could possibly read that, but otherwise it almost goes out of its way to say that it didn't. And the last thing I would say about that is even if he pled that, he's got to plead actual damages, even if there wasn't an investigation, and there's no actual damages pled here. What pleading of actual damages would you consider to be sufficient? What should he have pled? Something plausible. It's not plausible to say that your credit score went down. No one's credit score goes down because they're delinquent to Chase Home Finance LLC as opposed to JPMorgan Chase Bank N.A. No one is humiliated because they're in default to Chase Home Finance LLC instead of JPMorgan Chase Bank N.A. They're not relying on their credit report to find out. He'd almost have to allege you said that he didn't owe the debt at all to anybody for that to make sense, that his credit score had gone down improperly. For there to be actual damages, correct. He would have to have pled some sort of willful violation to get statutory damages.  Okay, thank you, John. Thank you. Just a couple points in response, Your Honor. The first is I just want to emphasize that we're not asking a lot here of JPMorgan Chase Bank. All we're asking is that they follow the very same standard that they would be required to follow in communications directly with debtors when they make indirect communications with a consumer reporting agency. Even though the communication goes through a consumer reporting agency, we submit that that is still an indirect communication. The text of the statute specifically includes indirect communications with debtors, and indirect can only mean through third parties. In other words, the other side would essentially be writing out indirect communications out of the statute if they don't include some communications through third parties. Now, of course, all communications to third parties aren't going to be included. If you have a particular communication to a third party that there's no chance that a consumer is going to see, and this case they cite is the Lorenz case. That's a case where the communication was to the Social Security Administration, and it was an effort to go around the consumer and try to garnish their benefits without letting the consumer know. That, you can obviously imagine, is the type of case where a consumer isn't going to be confused by a false name because the consumer is never seeing the false name. But with a consumer report, I think it's crystal clear that consumers regularly see their consumer reports, can certainly be confused by what appears on their consumer reports, and that's actually indicated by the fact that consumers have a right to their consumer reports. You can actually obtain your consumer report more than once a year. That's a right that Congress has created. I think Congress fully understood that consumer reports were the type of thing where a communication to them is effectively an indirect communication to the consumer. I just mentioned the hypothetical case of Chase Debt Collection Services appearing on the consumer report. My friend on the other side effectively said that's fine, that that would be okay, that even the least sophisticated consumer would have no question in that type of case that Chase Debt Collection Services is actually J.P. Morgan Chase Bank N.A. and not their debt collector. So that's sort of where their rule would lead you, to these sort of extreme hypotheticals where creditors are going to really push the boundaries, really push the rules as far as they can go in order to try to enforce their debts. I would just note, so this issue about Mr. Pinson knowing that he owes a debt to J.P. Morgan Chase Bank and that Chase Home Finance LLC is the same entity as J.P. Morgan Chase, that actually is not in the complaint that he put two and two together. He has only alleged that he has been confused from the moment that he received the Chase Home Finance LLC trade line on his consumer report. But more importantly, that really seems like the type of factual question that needs to be developed. We don't know exactly what Mr. Pinson thought at that particular moment and how that would factor in to the least sophisticated consumer standard, which obviously is an objective standard. And then the final thing on the FCRA issue, I didn't get a chance to talk about damages. My friend on the other side brought that up. I think, you know, certainly he alleged that there were actual damages based on the confusion that he felt by that particular trade line. I don't think that in and of itself is, I think that in and of itself is certainly sufficient. But I'd also just note that he also alleged willful, a willful violation of the act because of his repeated communications to TransUnion and the alleged repeated times that JPMorgan Chase Bank failed to investigate and that a willful violation of the act would not require a showing of actual damages. And that's certainly more than sufficient at the 12B6 stage. If there are no further questions, thank you very much. Thank you. I would note that Mr. Paddock was appointed pursuant to an Addendum 5 appointment, and we appreciate your service to the court. Thank you very much. We're going to come back in five minutes.